IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 26, 2015 Session

IN RE HOPE A.[1]


**Appeal from Juvenile Court for Campbell County**
**No. 2014-JC-51      Jon Kerry Blackwood, Judge[2]**


**No. E2014-02407-COA-R3-PT-FILED-NOVEMBER 17, 2015**


This appeal concerns a father's parental rights to his daughter. The trial court found clear and convincing evidence existed to support the termination of the father's parental rights on the statutory ground of abandonment when he willfully failed to visit the child for the four months preceding the filing of the termination petition. The court also found termination of the father's rights was in the best interest of the child. The father appeals. We affirm as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed as Modified; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

Kristie N. Anderson, Jacksboro, Tennessee, for the appellant, Gregory S. A.

Lisa C. Werner, Knoxville, Tennessee, for the appellees, Angela M. M. and Richard A. M.

Lisa A. White, Knoxville, Tennessee, Guardian ad Litem.

---

[1] To protect the identity of the child in a parental rights termination case, we use initials instead of the last names of the parties.
[2] Sitting pursuant to designation of the Tennessee Supreme Court.

# OPINION

## I.  BACKGROUND

Married in August 1997, Gregory S. A. ("Father") and Angela M. M. ("Mother"), had one child during their marriage, Hope Leanne A. ("the Child").  In 2005, the year prior to the Child's birth, Father broke his back while working in the mines.  After his injury, he began taking significant amounts of prescription pain medication.  In 2009, Father and Mother divorced.  According to the permanent parenting plan, Father was to have the Child each weekend beginning Friday at 5:00 p.m. until Sunday at 5:00 p.m.  Additionally, one week per month, Father was to have the Child from Monday at 5:00 p.m. until Thursday at 5:00 p.m. Father's co-parenting time was to be supervised by the paternal grandmother.

After Mother remarried in January 2010, Father remarried in October 2010.[3]  In April 2012, Father filed a petition for criminal contempt against Mother, alleging she willfully and intentionally failed to make the Child available for visitation.  Later that year, in November 2012, Mother was indeed found in criminal contempt.  Another petition for criminal contempt filed by Father remained pending during this action.  Mother filed a petition for dependency and neglect against Father in March 2013.  The petition to terminate Father's parental rights followed a year later in February 2014.

Father testified he maintained regular phone contact with the Child and would have visited with her if Mother had allowed it.  In response, Mother claimed she never failed to produce the Child for visitation until after February 2014, once a "no-contact order" was placed for Father "to stay away from [the Child]" and not exercise his visitation.  In regard to his home, Father stated he was currently residing with his sister while making repairs to his residence, but visitation could be done there.  According to Father, he was never advised his home was inappropriate or unfit, and he received no requests regarding improvements that needed to be made to his home.  Father acknowledged at trial: "I was strung out on pills pretty bad.  I'll be the first to tell you." He admitted to "buying [pills] off the street."  Father further noted he had "anger problems."  According to Father, however, his medication issues never interfered with his ability to care for his daughter.

The trial was conducted on October 21 and 22, 2014.  Mother's attorney contended termination of Father's parental rights should occur based on the following: Father's home was unfit for the Child's welfare; he engaged in conduct exhibiting wanton disregard for the welfare of the Child; Father was incompetent to adequately provide care and supervision because of his impaired mental condition due to drug use;

---

[3] On February 2, 2010, a restraining order and no contact order was entered preventing Father contact with the three children of his new wife.

he had failed to make child support payments; Father had willfully failed to visit the Child; and being in Father's care posed a substantial risk of harm to the Child. The court made the following findings:

> Father is a self admitted drug abuser who admits he will always be on pain medication. Father claims that he has not abused drugs for several months, however, the only proof of this is his word. . . . Several times he has been to either mental health facilities or drug rehabilitation facilities. He never spent much time at any of the facilities and on some occasions even checked himself out. . . . Father never followed any . . . [after care] instructions and stated the reason was because he just did not want to. Father was ordered twice by this [c]ourt to undergo a drug and alcohol assessment, which he did not do as he did not find it important. It was not until after trial started that Father underwent such an assessment.
>
> Father claims that his mother has been at the pick up exchange point on several occasions, but Mother has refused to bring the [C]hild. Mother denies that accusation. The [c]ourt accredits Mother's testimony and finds that Father has not exercised any visitation for four (4) months [preceding] the filing [of the petition to terminate parental rights].
> Although Father has not provided support, this [c]ourt finds that such failure is not willful because of his lack of income.[4] However, it is an indication of how he views his responsibility as a parent.
>
> Further, . . . in its present state [Father's] house is unfit for a child. Based on [Father's] unreliability, the [c]ourt doubts he can furnish a fit residen[ce] for the [C]hild.

The court further found Father can be violent and aggressive, he is irresponsible in his parental duties, and the "[C]hild gets physically sick and emotionally upset when she has to visit Father." It was observed by the court the Child lives in a stable home and is happy with a stepfather who loves her.

In a best interest review, the court determined

---

[4] The trial court granted a directed verdict on this ground.

Father has not made sufficient adjustments to make it safe and in the best interest of the [C]hild to be in the home of the Father. Father has not ha[d] a meaningful relationship with the [C]hild since July 2013. The physical environment of [Father's] home is not healthy. At present, the home is unfit. Criminal activity has occurred at the premises. Father testified that the home had been burglarized, resulting in the shattered windows and damage to the door. Finally, the Father's mental and emotional status would be detrimental because of his susceptibility to drug abuse.

Accordingly, the trial court terminated Father's parental rights on November 3, 2014. Father filed a timely notice of appeal.

## II. ISSUES

The issues raised by Father on appeal are restated as follows:

A. Whether the trial court erred in finding Father willfully failed to visit the Child for the four months preceding the filing of the petition to terminate parental rights.

B. Whether the trial court erred in finding it was in the best interest of the Child to terminate Father's parental rights.

The Guardian ad Litem contends the trial court erred when it found Father did not abandon the Child for willfully failing to provide support and when it failed to find the persistence of conditions met the statutory requirements for termination of Father's parental rights.

## III. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.,* 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-

113(I)(1)).  "[F]ew consequences of judicial action are so grave as the severance of natural family ties." *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds.  *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002).  Due process requires clear and convincing evidence of the existence of the grounds for termination of the parent-child relationship. *In re Drinnon*, 776 S.W.2d at 97.  A parent's rights may be terminated only upon

> (1)  [a] finding by the court by clear and convincing evidence
> that the grounds for termination of parental or guardianship
> rights have been established; and

> (2)  [t]hat termination of the parent's or guardian's rights is in
> the best interest[] of the child.

Tenn. Code Ann. § 36-1-113(c).  The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights.  *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), abrogated on other grounds by *In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions.  *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).  Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable.  *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003).  This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.  *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004).  It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2010, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> A reviewing court must review the trial court's findings of
> fact de novo with a presumption of correctness under [Rule
> 13(d) of the Tennessee Rules of Appellate Procedure].  *See In
> re Adoption of A.M.H.*, 215 S.W.3d [793,] 809 [(Tenn.

2007)]. In light of the heightened burden of proof in proceedings under [Tennessee Code Annotated section] 36-1-113, the reviewing court must then make its own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim. *State Dep't of Children's Servs. v. Mims*, 285 S.W.3d [435,] 447-48 [(Tenn. Ct. App. 2008)]; *In re Giorgianna H.,* 205 S.W.3d 508, 516 (Tenn. Ct. App. 2006); *In re S.M.,* 149 S.W.3d 632, 640 n. 13 (Tenn. Ct. App. 2004). Appellate courts conduct a de novo review of the trial court's decisions regarding questions of law in termination proceedings. However, these decisions, unlike the trial court's findings of fact, are not presumed to be correct. *In re Angela E.*, 303 S.W.3d [240,] 246 [(Tenn. 2010)]; *In re Adoption of A.M.H.*, 215 S.W.3d at 809.

*In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010).

## IV. DISCUSSION

### A.

Tennessee Code Annotated section 36-1-113(g) lists numerous grounds for termination of parental rights. As relevant to this case, Tennessee Code Annotated section 36-1-113(g) provides:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
> (1) Abandonment by the parent or guardian, as defined in 36-1-102, has occurred; . . .

In turn, Tennessee Code Annotated section 36-1-102(1)(A)(i) defines "abandonment," in relevant part, as follows:

> For a period of four (4) consecutive months immediately preceding the filing of proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who

is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child . . . .

### Failure to Visit

In terminating Father's parental rights based upon the statutory ground of abandonment for failure to visit, the court considered the four months preceding February 10, 2014, the filing date of the termination petition. Thus, the relevant time period was October 9, 2013, to February 9, 2014. Father concedes he did not visit the Child, but he asserts his failure to visit was not willful. Father argues Mother denied him visitation. He relies on the fact Mother was previously held in contempt for denying visitation. He further observes a new petition for contempt against Mother was pending during the relevant time period.

Mother testified she made the Child available at the exchange location each time Father was scheduled to have co-parenting time. She brought photographs to trial showing her presence at the exchange location every other week as scheduled for more than four months prior to filing the petition to terminate parental rights. Neither Father nor his agent was present to pick up the Child. Mother's current husband testified he had accompanied Mother and the Child to the exchange location on numerous occasions when Father did not show up to retrieve the Child. Father provided no proof he or his agent had been to the exchange location at any time in the four months prior to the filing of the petition to terminate. Father admitted he had not seen the Child since July 2013. When questioned about his efforts to see the Child between November 2013 and February 2014, he answered, "None I don't guess."

In *In re S.J.W.*, we noted as follows regarding willfulness in the context of termination proceedings:

> The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months.
>
> * * *
>
> In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of

culpability as is required by the penal code. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.

Failure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so.

*In re S.J.W.*, No. E2013-00351-COA-R3-PT, 2014 WL 296027, at *5 (Tenn. Ct. App. Jan. 28, 2014) (quoting *In re Audrey S.,* 182 S.W.3d at 863-64 (internal citations omitted)).

The evidence provided by Mother, her new husband, and Father himself reveals Father willfully failed to visit the Child. Father presented no proof he or his agent appeared at the meeting location in the four months preceding the filing of the termination of parental rights petition. Having concluded there was clear and convincing evidence establishing at least one statutory ground to terminate Father's parental rights, we must consider whether terminating his rights was in the best interest of the Child. First, let us consider two issues raised by the Guardian ad Litem.

## Failure to Support

It is alleged the trial court erred in not finding Father abandoned the Child by willfully failing to support her. Father testified he unsuccessfully tried three times to get approved for Social Security Disability. He noted he did not attempt to work because "[y]ou cannot be signed up on your disability and work too." He started working again on September 11, 2014. He observed, "I knowed when I went to work that they was going to take – start taking child support out."

Father acknowledged his mother had been supporting him financially for many years because he was unemployed. All his bills and medical purchases were paid by his mother. He noted his mother sometimes would pay over $1,500 a month in order for him to obtain drugs and cigarettes. Father never sent any of the money his mother gave him to the Child and never asked his mother to help him pay his child support.

The trial court determined Father's lack of support was not willful because of his lack of income.

"A parent is liable for the support of his or her child throughout minority, with or without the existence of a court order. . . ." *Kirkpatrick v. O'Neal*, 197 S.W.3d 674, 680 (Tenn. 2006). While "a parent cannot be said to have abandoned a child when his failure to support is due to circumstances outside his control," *In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. 2013), Father never presented medical proof documenting a disability. He was unsuccessful in obtaining disability benefits and did not provide evidence of an inability to work during the relevant four-month period. He spent the money he was given by his mother on pain medication and gave none to his daughter. In our view, his failure to pay child support under the circumstances was not attributable to any "circumstances outside [his] control." He was aware of his duty to support the Child, had money available to him, and decided not to pay child support without a justifiable excuse. *See In re Courtney N.*, No. E2012-01642-COA-R3-PT, 2013 WL 2395003, at *6 (Tenn. Ct. App. May 31, 2013). He testified at trial as follows:

> THE COURT:  But you'll agree, you haven't paid any child support?
>
> FATHER:  No, I've not.
>
> Q:  Have you loved her enough to use the money that you were getting from your mother . . . to support [the Child]?
>
> FATHER:  No, I've not.

On the record before us, we conclude the evidence preponderates against the trial court's finding Father did not willfully fail to support the Child.

## Persistence of Conditions

The Guardian ad Litem also argues the ground commonly referred to as "persistence of conditions" applies. This ground is defined at Tennessee Code Annotated section 36-1-113(g)(3):

> The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months *and*:
>
> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that,

therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home . . . .

We conclude this statutory ground of termination is inapplicable to Father. We do not find the permanent parenting plan to be an "order of a court" by which "[t]he Child has been removed from the home of the parent." *See* Tenn. Code Ann. § 36-1-113(g)(3).

**B**.

The trial court was correct in finding termination of Father's parental rights was in the best interest of the Child. In order to terminate parental rights, a court must determine clear and convincing evidence proves not only that grounds for termination exist, but also that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113 (c)(i) and (ii). In a best interest analysis, Tennessee Code Annotated section 36-1-113(i), provides:

(i)      In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the Court shall consider, but is not limited to, the following:

1)      Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

2)      Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

3)      Whether the parent or guardian has maintained regular visitation or other contact with the child;

4)      Whether meaningful relationship has otherwise been established between the parent or guardian and the child;

5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

6) Whether the parent or guardian, or other person residing with the parent or guardian. has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household.

7) Whether the physical environment of the parents or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol controlled substances or controlled substances analogues as may render the parent or guardian consistently unable to care for the child in a sale and stable manner;

8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to T.C.A. § 36-5-101.

Tenn. Code Ann. § 36-1-113 (i).

In the instant case, Father has made no adjustment of circumstance, conduct, or conditions as to make it safe and in the Child's best interest to be in his home. Father testified he has been addicted to drugs since 2006 but has not wanted to go to meetings, attend one-on-one counseling, or enter rehab. He has been in and out of treatment centers for years but has refused to stay in the programs for more than three to four days. Father admitted the probability is high he will use drugs for the rest of his life and acknowledged he did not love his daughter enough to get off the pills. When asked how he had changed since the divorce, Father stated, "[t]here ain't nothing changed."

Father was allowed phone contact with the Child, but on several occasions his phone was disconnected. When the Child and her Father did speak on the phone, his behavior on the calls often became so belligerent that it was traumatizing to the Child. The Guardian ad Litem was present for one of the phone calls and became so disturbed

by what she heard, she filed a motion that resulted in the cessation of phone contact on January 30, 2014.

No meaningful relationship has been established between the Child and Father. Mother testified the Child would throw up and have diarrhea when she had to go see Father. The Child had to be prescribed medicine to relieve her condition. In addition, Mother related the Child had been seeing a counselor since she was two years old to deal with issues involving Father.

During his testimony, Father admitted to numerous criminal acts occurring in his home and arrests for domestic violence issues. Some of these domestic violence matters occurred while Father was exercising co-parenting time with the Child. He acknowledged use of drugs in the home. Photographic evidence and testimony depicted an uninhabitable home with no electricity or running water. The windows were broken out and there was filth and debris. The home clearly is not healthy or safe.

The evidence does not preponderate against the trial court's findings. Clear and convincing evidence shows the Child's best interest is served by permanently severing Father's parental rights.

## V. CONCLUSION

The trial court's ruling Father did not willfully fail to support the Child is reversed. The remainder of the judgment, including the portion terminating Father's parental rights, is affirmed. Costs on appeal are taxed to the appellant, Gregory S. A. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the court's judgment and for the collection of costs assessed below.

_____
JOHN W. McCLARTY, JUDGE